UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JUSTIN E. MANLEY, individually and on behalf of all others similarly situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. 08 C 3808 |
| v. | ) ) | Judge Joan B. Gottschall |
| NATIONAL AUTO WARRANTY SERVICES, INC. d/b/a DEALER SERVICES, | ) ) ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Justin E. Manley ("Manley") sued defendant National Auto Warranty Services, Inc. d/b/a Dealer Services ("Dealer Services") for violations of the Fair Credit Reporting Act, 15 U.S.C. § 1681n and § 1681o ("FCRA"). Before the court are cross-motions for partial summary judgment on the issue of whether the actions of Dealer Services constituted a violation of the FCRA. For the reasons stated below, both motions are denied without prejudice.

### I. BACKGROUND[1]

In June 2008, Dealer Services sent Manley two mailers offering an extended warranty program for his car for "**2007 Pricing** PLUS 0% financing on programs activated today!" Ex. 1 at 1, Pl.'s Rule 56.1(a)(1) Compendium of Affs., Deps. & Other Materials (emphasis in original). The mailer urged Manley to "call [Dealer Services] immediately with the **exact miles** and **VIN Number** [sic] on your vehicle to discuss options and take advantage of our **current limited time offer**." *Id.* (emphasis in original). Dealer Services stated on the mailers that no credit check was required, but that an unspecified minimum down payment applied for the "0% financing" option.

---

[1] Facts are taken from the parties' Rule 56.1 statements of material facts and are undisputed unless otherwise noted.

*Id.* Finally, the mailer disclosed the prescreened offer of credit was based on information in Manley's credit report indicating that he met certain criteria and that the offer was not guaranteed if he did not meet Dealer Services criteria. *Id.* at 2.

A warranty cost between $1,500 and $3,500, for coverage of between four and six years. If a customer chose not to pay for the warranties in full, he or she was required to pay over a twelve, eighteen, or twenty-four month period in equal monthly installments. Dealer Services also required a down payment of at least 10% of the warranty cost, typically around $350.[2] A third party, Mepco Finance Corporation, billed the customer in monthly installments for the balance of the warranty cost.[3] If a customer failed to make an installment payment, Dealer Services would cancel the warranty, either the same month that the customer defaulted on payment or the following month.

## II. ANALYSIS

Manley moves for partial summary judgment on Counts I and II of his complaint, seeking to establish that Dealer Services violated the FCRA but deferring the determination of the

---

[2] There is a dispute over whether the correct figure is $350 or $395. *See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 14 (pointing out that the Director of Marketing states that the sum is $350 in his affidavit, but testified at his deposition that the sum was $395). Since the actual amount does not affect the court's analysis, the court uses the later affidavit figure.

[3] Manley disputes that Mepco provides "financing," because he asserts that the use of that term constitutes a legal conclusion. However, the record clearly shows that Mepco is involved in the process of collecting money from consumers after they have purchased a warranty from Dealer Services. *See* Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶ 15 (stating that Mepco provides financing); Vogt Aff. ¶ 13 (same), Def.'s Statement of Undisputed Facts, Ex. B; Vogt Dep. 79:20-80:17 (discussing how the payment for warranties works), Pl.'s Compendium of Affs., Deps., & Other Materials, Ex. 6. Similarly Manley disputes that "0% financing" is provided, but it is clear that consumers pay no more for a certain warranty if they pay over time rather than up-front. *See* Pl.'s Resp. to Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 16 (stating that interest is 0%); Vogt Aff. ¶ 14 (same); Vogt Dep. 112:10-113:16 (explaining how monthly payments are calculated).

company's requisite mental state for trial.[4]  Dealer Services cross-moves on the same issue.

**A.     Legal Standard**

Motions for partial summary judgment are permitted under Rule 56.  Fed. R. Civ. P. 56(a)-(b); *Am. Nurses' Ass'n v. State of Ill.*, 783 F.2d 716, 729 (7th Cir. 1986).  Summary judgment is appropriate when the record reveals that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  "A 'genuine issue' exists where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'"  *AA Sales & Assocs., Inc. v. Coni-Seal, Inc.*, 550 F.3d 605, 608-09 (7th Cir. 2008) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).

In seeking a grant of summary judgment, the moving party must identify "those portions of 'the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).  This initial burden may be satisfied by presenting specific evidence on a particular issue or by pointing out "an absence of evidence to support the non-moving party's case."  *Id.* at 325.  In response, the non-moving party cannot rest on the pleadings, but must designate specific material facts showing that there is a genuine issue for trial.  Fed. R. Civ. P. 56(e); *Celotex Corp.*, 477 U.S. at 324.  When considering a motion for summary judgment, the court must view

---

[4] Manley asserts that "Dealer Service's mental state is a fact question not appropriate for summary judgment."  Pl.'s Mot. at 2 (doc. no. 12).  Of course, where there is no genuine issue of material fact, the court can grant summary judgment on claims involving a defendant's state of mind.  *See, e.g.*, *Murray v. New Cingular Wireless Servs., Inc.*, 432 F. Supp. 2d 788, 793-94 (N.D. Ill. 2006) (granting summary judgment in favor of the defendants on the issue of willful noncompliance with the FCRA), *aff'd*, 523 F.3d 719 (7th Cir. 2008).  Since Dealer Services has moved only for partial summary judgment also, the parties have conceded that there is a genuine issue of material fact regarding Dealer Service's alleged willful or negligent infringement of the FCRA that must be reserved for the trier of fact even if the court finds that, as a matter of law, the FCRA has been violated.

the record and any inferences to be drawn from it in the light most favorable to the opposing party. *AA Sales & Assocs., Inc.*, 550 F.3d at 609. "On cross-motions for summary judgment, [a court] construe[s] all facts and inferences therefrom in favor of the party against whom the motion under consideration was made." *Five Points Rd. Joint Venture v. Johanns*, 542 F.3d 1121, 1124 (7th Cir. 2008).

**B.     Arguments**

Manley argues that: (1) Dealer Services' mailer was not an offer of credit because at all times the consumer was required to make payments in advance of the services received; and (2) Dealer Services conditioned the offer on impermissible criteria under the FCRA, namely the mileage and value of the car. Dealer Services asserts that it made a firm offer of credit of financing for a warranty costing an average of $2,500 and that all persons who received a mailer were eligible for 0% financing on the residual balance of the warranty purchase price.

(1)     Objections To Material Facts

As a preliminary matter, the court must consider three general objections that the parties make regarding their opponent's statement of material facts or the exhibits thereto.[5] First, Manley objects to Dealer Services' statements of material fact numbers 13 through 19, arguing that they improperly state a legal conclusion because they contain the term "finance" or "financing," which he claims is synonymous with the term in dispute in this case: "credit." Dealer Services argues the statements are of fact, not legal conclusions. Manley does not dispute that customers were allowed to pay for the purchased warranty over time, but he does dispute whether the payments were advance payments or credit payments. To the extent that the language in the statement implies a legal conclusion, the court has disregarded it. To the extent

---

[5] Disputes regarding specific material facts will be addressed in the body of the order, as needed.

that Dealer Services' statements of fact comport with Local Rule 56.1, this court's standing order, and the Federal Rules of Evidence, the court has considered the statements and has, where supported by the record, deemed them admitted over Manley's objection.

Second, Manley asserts that the statements in Dealer Services' affidavit are insufficient to defeat summary judgment because they are conclusory and self-serving. However, an affidavit, even a "self-serving" one, can create an issue of material fact. *Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 504 (7th Cir. 2004). The rules provide that "opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). To the extent that the affidavit comports with the federal rules, the court has considered it.

Third, Dealer Services asserts that Manley cannot defeat its cross-motion because he offers only argument and denials of Dealer Services' facts and proffers no affirmative matter in opposition. This argument is unpersuasive given that the parties have filed cross-motions that assert the same arguments in support and opposition. It is true that Dealer Services complied strictly with Local Rule 56.1 and filed a duplicate copy of its Rule 56.1(b)(3) facts in opposition to Manley's motion as Rule 56.1(a)(3) facts in support of its own cross-motion. It is also true that Manley did not do so and that he put forth a single additional undisputed material fact in opposition to Dealer Services' motion. Nevertheless, Manley's failure to put forth all of his original material facts as Rule 56.1(b)(3) facts is harmless given that the court has a full set of the parties' facts and Dealer Services had access to Manley's facts prior to filing its own motion. The court declines to turn a technical oversight into a dispositive omission and will consider all facts put forth by both parties as they apply to arguments in support of and opposition to the

motions before it.

    (2)    Count I

Dealer Services does not dispute that it prescreened Manley's credit report. Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 11; *see* Compl. Exs. 1-2 (mailers with prescreen disclaimer). The FCRA outlines the permissible purposes for which a company may access a consumer's credit information. *See generally* 15 U.S.C. § 1681b. Access is allowed "generally only after the consumer initiates contact with the company." *Cavin v. Home Loan Center*, 531 F.3d 526, 529 (7th Cir. 2008). Here, it is undisputed that Manley did not authorize a credit reporting agency to provide information to Dealer Services or authorize Dealer Services to access his information. Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶¶ 8-9. This renders certain permissible purposes inapplicable. *See* § 1681b(a) (detailing transactions initiated by a consumer that justify furnishing of consumer reports); § 1681b(b) (outlining the use of consumer reports for employment purposes). Thus, the sole basis under which Dealer Services' mailer to Manley can be found to comply with the requirements of the FCRA is if the offer of the warranty meets the criteria of a "firm offer" of credit or insurance. *See* 15 U.S.C. § 1681b(c)(1)(B)(i) (providing for an exception to the usual need for consumer's permission to access a credit report); *Perry v. First Nat'l Bank*, 459 F.3d 816, 825 (7th Cir. 2006) (explaining § 1681b(c)'s limitations). The issues are narrowed further by Dealer Services' admission that the offer was not for insurance.[6] Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 12.

The dispute would appear, therefore, to center around whether the warranty offer falls within the FCRA's definition of a "firm offer of credit." However, Manley alleges that "Count I

---

[6] Some states require that extended warranties be underwritten by insurance companies and are regulated as insurance products. *See* Fed. Trade Comm'n, Facts for Consumers: Auto Service Contracts, *at* http://www.ftc.gov/bcp/edu/pubs/consumer/autos/aut02.htm (May 1997) ("A service contract is a promise to perform (or pay for) certain repairs or services.").

of this lawsuit is not based upon the theory that Dealer Services failed to make a 'firm offer' of credit or insurance, but rather, it is based upon the theory that Dealer Services failed to offer Manley credit or insurance at all." Comp. ¶ 17. He frames the issue in this way in part to distinguish this case from *Murray v. New Cingular Wireless Services*, 523 F.3d 719 (7th Cir. 2008), which dealt with a mailer offering a free phone in connection with signing up for a year or more of service. *Id.* at 722. The court in *Murray* held that a promise of the free phone did not mean that the offer was not one "of credit" where the mailer offered phone services on credit because the service was provided before payment was due and the cost of the "free" phone was amortized over the length of the contract. *Id*. The court noted that "[t]he term 'credit' means the right granted by a creditor to a debtor to defer payment of debt or to incur debt and defer its payment or to purchase property or services and defer payment therefor."[7] *Id.* (quoting 15 U.S.C. § 1691a(d)). Thus, it found that the fact that the credit offered could be used solely to purchase the goods offered did not negate the fact that it was an "offer of credit" within the meaning of the FCRA. *Id.*

In distinguishing this case from *Murray*, Manley points to the timing of the payments and services at issue. In *Murray*, the court reasoned, in part, that the mailer advertising phone service was an offer of credit because the service was provided before the payment was due. *Id.* Indeed, the district court below specifically noted that the record showed that "consumers who sign up for a wireless phone plan are extended credit because they pay for service at the end of the month rather than buying the minutes in advance." *Murray v. New Cingular Wireless Servs., Inc.*, 432 F. Supp. 2d 788, 791 (N.D. Ill. 2006), *aff'd*, 523 F.3d 719 (7th Cir. 2008). Manley asserts that in this case, consumers pay *in advance of* receiving the services, which means that there is no offer

---

[7] The FCRA adopts this definition of "credit" from the Equal Credit Opportunity Act, 15 U.S.C. § 1691 *et seq.* ("ECOA"). 15 U.S.C. § 1681a(r)(5).

of credit.

It is well-established that where consumers make contemporaneous or advance payments for services there is no "credit transaction." *See, e.g.*, *Laramore v. Ritchie Realty Mgmt. Co.*, 397 F.3d 544, 547 (7th Cir. 2005) (concluding that a typical residential lease was not a credit transaction as defined in § 1691a(d) because it "involves a contemporaneous exchange of consideration" where the tenant's responsibility to pay the total rent due arises in installments and not all at the moment the lease is signed); *Shaumyan v. Sidetex Co.*, 900 F.2d 16, 18 (2d Cir. 1990) (holding that a home improvement contract that provided for contemporaneous payments as work progressed was not a "credit transaction" because it did not permit the customer to defer payments for services performed). Of course, the determination of whether a specific instance constitutes a "credit transaction" is factually specific. *See, e.g.*, *Cole v. U.S. Capital, Inc.*, 389 F.3d 719, 728 (7th Cir. 2004) (observing that a court "must consider the entire offer and the effect of all material conditions that comprise the credit product in question" to determine whether the offer was a legitimate credit product or a "guise for solicitation"); *Laramore*, 397 F.3d at 547 n.2 (noting that, although such a situation did not present itself in the case at bar, it would be possible for parties to craft a lease that met the criteria for a "credit transaction"). Thus, if Dealer Services offered a deferred payment for a service, it offered "credit," but if payments were contemporaneous or in advance, then no credit transaction took place.

The parties are in agreement as to the law regarding what constitutes a "credit transaction" and are largely in agreement about the facts. Unfortunately, as it stands, the record before the court is woefully undeveloped.[8] As a result, neither party has met its burden to come

---

[8] The court notes that Manley moved for summary judgment one month after filing the complaint and just two weeks after counsel appeared for Dealer Services. It is, therefore, reasonable to assume that no discovery has taken place in this case. This assumption is bolstered by a review

8

forward with facts that demonstrate that the warranty does or does not constitute a "credit transaction" as a matter of law.

For example, the parties dispute how the value of the warranty and the payment schedule line up. Evidence relating to the payments could certainly aid in a determination of whether the mailer offered a "credit transaction." *See Liberty Leasing Co. Machamer*, 6 F. Supp. 2d 714,717 (S.D. Ohio 1998) ("The relevant inquiry is whether the incremental payments constitute a contemporaneous exchange of consideration for the possession of the leased goods."). Manley argues that the consumer pays in advance of the amount of the contract due monthly and that this demonstrates that no "credit transaction" occurs. In support, he offers a graph, created by counsel, that assumes that the value of the warranty on a monthly basis is equal to the total amount of the warranty divided by the total number of months for which the warranty runs.[9] Thus, Manley's argument rests on an assumption that the warranty's value begins at zero and rises incrementally to its full value at the conclusion of the warranty.

In opposition, Dealer Services contends that Manley's argument falsely assumes that warranty coverage could be obtained on a month-to-month basis, whereas it is offered only on a term-basis with full payment required up front (unless the "financing" option is selected). Unfortunately, the evidence in the record relating to the value of the warranty is ambiguous. *See*

---

of the evidence submitted in support of the parties' motions for summary judgment, which consists solely of: (1) the mailers at issue; (2) the defendant's answer to the complaint; (3) one affidavit from each of the parties; (4) a public business registration document; and (5) discovery from a case against Dealer Services by another plaintiff in another district, namely interrogatory responses and a deposition of Dealer Services' marketing director. *See* Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 6 (agreeing that the plaintiff's summary judgment motion is based on facts obtained from Dealer Services during discovery in a previous FCRA lawsuit).
[9] For example, if the warranty costs $2,400 and runs for four years, Manley assumes that the value of the warranty is $50 each month. Manley reasons that if he makes a down payment of $200 and monthly payments of $91 over two years, he makes payments in advance of the value received.

Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶¶ 20-21 (stating that a warranty has value throughout its lifespan and that the value does not diminish over time). The parties point to nothing in the record to clarify what the warranty is worth at specific points in time, although it appears to be a factual issue that could be determined through discovery and/or expert testimony. Viewing the facts in the record and all inferences in Manley's favor, the warranty's "steady" value could mean that the purchaser is buying an equal share of the warranty with each month's payment. Conversely, it could also mean that the value to the consumer on day one is the full value, namely the ability to obtain compensation for any necessary repairs and services, and that this value does not diminish over time. Thus, the "undisputed" fact allows for varying inferences that support the arguments of both parties and is therefore an insufficient basis to determine, as a matter of law, whether a consumer pays in advance or obtains credit to finance the warranty services.

Furthermore, each party offers "undisputed" facts but neither party provides sufficient context to enable the court to draw any dispositive conclusions. For example, it is undisputed that if a customer defaults on a monthly payment, Dealer Services cancels the warranty no later than the month following the delinquent payment. Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 18. However, neither party has pointed to anything in the record to clarify whether Dealer Services attempts to recover the remaining unpaid balance from the customer or not. Absent this context, the court cannot determine whether the full balance was due in full like a mortgage, as Dealer Services asserts, or whether the payments were discrete monthly installments similar to monthly rental under a residential lease, as Manley suggests. Similarly, although it is undisputed that Dealer Services offers refunds if money is owed to the customer, neither party explains why money would be owed. *See* Def.'s Resp. to Pl.'s Statement of

Undisputed Facts ¶ 19 (undisputed that Dealer Services refunds money where due to the customer); Vogt Dep. 91:6-19 (speculating that a refund would be made but stating that he did not know the specifics of how it worked), Ex. 6 to Pl.'s Compendium of Affs., Deps., & Other Materials. Viewing this in the light most favorable to Manley, as the court must when considering Dealer Services' motion, this fact suggests that the warranty was considered a month-to-month obligation that could be cancelled without further obligation to pay the full warranty sum. But, viewing this in the light most favorable to Dealer Services, as the court must when considering Manley's motion, the fact suggests nothing more than if a person pays too much for any reason, Dealer Services will return the excess. A key piece of evidence that would clear up many of these issues, namely the warranty itself, is absent from the exhibits filed in support of the parties' motions for summary judgment. Because neither party has met its burden to demonstrate that it is entitled to judgment as a matter of law, both parties' motions for summary judgment on Count I are denied without prejudice.

  (3) Count II

Manley alleges in Count II that Dealer Services' mailer was not a "firm offer of credit" because it impermissibly conditioned the ability to obtain the warranty, and therefore financing, on the make, model, and mileage of Manley's car. Compl. ¶¶ 35-37. "The term 'firm offer of credit . . .'" means any offer of credit . . . to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for the offer, except that the offer may be further conditioned on [credit worthiness established before selection for the offer, verification that the consumer continues to meet the selection criteria, or availability of pre-selected required collateral]." 15 U.S.C. § 1681a(l); *Cole*, 389 F.3d at 726. Thus, Dealer Services' mailer comports with the

FCRA as long as Manley was guaranteed to receive the loan if the information in his consumer report remained accurate. *See Dixon v. Shamrock Fin. Corp.*, 482 F. Supp. 2d 172, 176 (D. Mass. 2007) (citing *Perry*, 459 F.3d at 825).

Dealer Services' mailer urged Manley to "call [Dealer Services] immediately with the **exact miles** and **VIN Number** [sic] on your vehicle to discuss options and take advantage of our **current limited time offer**." Ex. 1 at 1, Pl.'s Rule 56.1(a)(1) Compendium of Affs., Deps. & Other Materials (emphasis in original). Manley argues that Dealer Services thereby conditioned its offer of credit on the type of vehicle Manley owned and its mileage, which are impermissible criteria under § 1681a(l). Indeed, it is undisputed that "Dealer Services conditioned the sale of its warranties on the type of vehicle owned, and its milage [sic]. Certain makes, models, and mileages were excluded." Def.'s Resp. to Pl.'s Statement of Undisputed Facts ¶ 23; *see* Ex. 1, Pl.'s Rule 56.1(a)(1) Compendium of Affs., Deps. & Other Materials (stating that callers should provide the exact mileage and VIN number of their vehicle). However, it is also undisputed that Dealer Services provided the credit reporting agencies with criteria regarding the value and age of the loan. Pl.'s Resp. to Def.'s Statement of Add'l Facts ¶¶ 9-10. Drawing all inferences in favor of Dealer Services, a reasonable jury could conclude that consumers were pre-selected based on the asserted criteria and that the mileage and VIN required from callers are needed solely to determine the best warranty product from multiple "options" and not for any improper purpose. Manley points to no evidence that any consumer actually was denied credit based on improper criteria to rebut such an inference.

Dealer Services argues that it made a firm offer of credit, that all purchasers of warranties were eligible for "0% financing," and that the screening for each of the identified criteria took place *before* the mailings. Again, it is undisputed that Dealer Services attempts to screen out

12

from the mailing lists consumers with "extraordinarily expensive vehicles and extraordinary high-mileage vehicles" by setting limits on the dollar amount and date of commencement of an existing car loan. Pl.'s Resp. to Def.'s Statement of Undisputed Facts ¶¶ 9-10. Dealer Services argues further that consumers with expensive vehicles will typically have loans that fall outside the range specified and that those having high-mileage vehicles will typically have no loans or will have loan commencement dates beyond those specified.[10] However, drawing all inferences in favor of Manley, Dealer Services' argument and facts do not negate the possibility that Dealer Services screens out consumers who are atypical using information on actual mileage and VINs, rejecting those who initiated a loan within the specified timeframe or with a value below the specified threshold but who have high mileage or expensive cars. Dealer Services asserts by affidavit that "[a]ll consumers who receive [its] mailings and purchase a motor vehicle extended service contract are eligible for 0% financing." Def.'s Statement of Add'l Facts ¶ 17. However, this statement presupposes that the consumer was deemed eligible to purchase a warranty but does not demonstrate that no consumer was deemed ineligible by dint of impermissible criteria.

Neither party has met its burden to prevail on summary judgment by citing to evidence in the record to demonstrate that it is entitled to judgment as a matter of law on the issue of whether Dealer Services screens consumers using impermissible criteria. Both parties' motions for summary judgment on Count II are denied without prejudice.

### III. CONCLUSION

Plaintiff's motion for partial summary judgment is denied without prejudice.

---

[10] Dealer Services improperly asserts this argument as a material fact and attempts to support the inference from testimony regarding Dealer Services' rationale for choosing its screening criteria. *See* Def.'s Statement of Undisputed Facts ¶ 11. In order for this statement to be a fact, rather than an argument, Dealer Services would need to present additional evidence, likely expert testimony, regarding the correlation of the selection criteria (value and age of loan) with disqualifying factors (expensive vehicle and high mileage).

Defendant's cross-motion for partial summary judgment is also denied without prejudice.

                ENTER:


                _____/s/_____
                JOAN B. GOTTSCHALL
                United States District Judge

DATED: March 17, 2009